## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CR-0147-CVE |
| | ) | |
| RENE JOSEPH GORMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is defendant's Motion to Suppress Statements (Dkt. # 15).  Defendant

Rene Joseph Gorman is charged with possession of marijuana with intent to distribute, possession

of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm.

See Dkt. # 2.  He asks the Court to suppress any statements made to police during a search of his

home on June 27, 2008, because police allegedly threatened to take his child into protective custody

before taking his statement.

**I.**

On June 27, 2008, Ronnie Leatherman, an officer for the Tulsa Police Department ("TPD")

prepared an affidavit for search warrant for 747 North New Haven, Tulsa, Oklahoma, and presented

it to Judge Rodney B. Sparkman of the Tulsa County District Court.  Judge Sparkman signed the

search warrant at 9:27 p.m.  The warrant authorized police to search Gorman's residence for:

> **MARIJUANA, DRUG PARAPHERNALIA, MONIES DERIVED FROM THE
> SALE OF ILLEGAL DRUGS, GUNS, CELLULAR PHONES, PAGERS,
> RECORDS, LEDGERS, COMPUTERS, KEYS, UNEXPLAINED WEALTH,
> AND PROOF OF OWNERSHIP.**

Dkt. # 14, Ex. C.  According to an incident report, the search warrant was executed at 9:40 p.m.

Dkt. # 18, Ex. B.  TPD officers knocked on the door and announced their presence.  No one

answered the door but police could hear people moving inside the residence.  Police forcibly opened

the door with a battering ram and entered the residence.

Police officers encountered Gorman, an adult female, later identified as Angel Carreiro, and

a 2 year old child, Rene Gorman, Jr., in the living room.  Gorman testifed that he was holding the

child when police entered the home.  Gorman Jr. is defendant Gorman's son and Carreiro is

defendant's wife.[1]  The adults were handcuffed and police officers removed the child from Gorman.

Before initiating the search, TPD officers asked Gorman, Carreiro, and the child to wait in the front

yard while officers secured the home.  Police conducted a sweep of the residence but did not find

any other persons in the house.  Leatherman states in his report that he presented a copy of the

warrant to Carreiro when she was sitting on a chair in the front yard.  Police found the following

evidence in the home:

- Plastic bag containing marijuana from an Asian box on the floor.  Weight of the marijuana 319 grams.
- Marijuana on a tray next to an Asian box.  Weight of the marijuana 26 grams.
- Marijuana in a green box on the floor.  Weight of the marijuana 24 grams.
- Chamber loaded .45 caliber handgun located on top of a speaker.
- Functional digital scales covered with marijuana residue on the floor.
- HiPoint firearm box containing 29 rounds of. 45 caliber ammunition.
- Residency paperwork from IRS addressed to Rene Gorman and Angel Carreiro at 747 N. New Haven.

Id. at 1.  The gun was found on a speaker next to a couch and TPD Officer Ashley Sokoloski

testified that the gun was within reach of the child.  She also testified that marijuana was found in

_____

[1]    The government refers to Carreiro as defendant's girlfriend; defendant testified that Carreiro is his wife.

an unlocked box next to a speaker at the opposite end of the couch, and the box was placed on the floor within reach of a child.

TPD Officer Justin Ritter read Gorman his Miranda rights while other officers were searching the house.  Ritter initially served as rear-containment to prevent anyone from leaving through the back of the house, but entered the house approximately 5 minutes after the search began. Ritter read defendant his Miranda rights from a pre-printed card issued by TPD and Gorman acknowledged that he understood his rights.  Ritter testified that he did not threaten or make any promises to Gorman before or after reading Gorman his Miranda rights.  He also testified that, based on his training and experience, he did not believe that Gorman was under the influence of drugs or alcohol.  Ritter states that Gorman orally waived his rights and voluntarily spoke to him.  Although Ritter could not remember Gorman's exact statement, Ritter recalls that Gorman said that he wanted to "take the charges" and accepted responsibility for contraband in the house to avoid criminal charges against his wife.

Leatherman entered the house about 10 minutes after the search started.  Leatherman asked Ritter if Gorman had been advised of his Miranda rights.  Ritter told Leatherman that defendant had been informed of his rights, acknowledged that he understood his rights, and orally waived his rights.  Leatherman interviewed defendant in a converted bedroom[2] and described the tone of the interview as casual.  Gorman stated that any contraband in the house belonged to him and he "want[ed] to take all the charges."  Id. at 2.  According to the police report, Gorman admitted that he had been convicted of a felony in Rhode Island and knew that he was not allowed to possess a

---

[2]    Leatherman described the room as a converted bedroom because the room was intended to be a bedroom but was being used as a den or living room.

firearm. Id.  However, he told Leatherman that he "just bought the gun from a friend because his girlfriend 'had been run in on.'"  Id.  He admitted to possessing marijuana, but claimed that he sold the marijuana to friends "at cost" and he did not make his living selling marijuana.  Leatherman asked Gorman about his source for marijuana, but Gorman refused to identify his supplier.  At the conclusion of the interview, police arrested Gorman but allowed Carreiro and the child to remain at the residence.  Id.

Gorman claims that he would not have made any statements if police had not threatened to take his child into state custody and he did not voluntarily waive his Miranda rights.  He asserts that police threatened to contact the Oklahoma Department of Human Services ("DHS") and take his child into custody if he did not talk to police.  Based on his testimony, it appears that the alleged threat was not made directly to defendant but, instead, by a female officer talking to Carreiro in the front yard.  He claims that the female officer made "ignorant" and "rude" comments to Carreiro and Gorman's child and told the child that everyone at the home would be "sleeping next to strangers" that night.  The female officer, Sokoloski, testified at the suppression hearing.  She admitted that she made statements to Carreiro about taking the child into state custody because of the condition of the home, such as the lack of any light source in the child's room, and the existence of dangerous contraband and a weapon within reach of the child.  She also testified that she spoke to defendant after he had received a Miranda warning and asked him about the poor condition of the home.  She described her tone as firm, but she felt it was necessary to say something.  Both Sokoloski and Leatherman testified that police have the authority to take a young child into protective custody, and this was not an empty threat.

4

## II.

Defendant claims that his <u>Miranda</u> waiver was involuntary, because police threatened to take his child into DHS custody.  The government disputes defendant's allegation and claims that police did not make any improper threat.  Even assuming that defendant's allegation is true, the government argues that this evidence alone is insufficient to show that the defendant's free will was overcome and his statement should not be suppressed.

In <u>Miranda v. United States</u>, 384 U.S. 436 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Id</u>. at 444.  Under this rule, the court must suppress a statement, even if voluntary, if a proper warning was not given before police initiated custodial interrogation of a suspect.  <u>United States v. Patane</u>, 542 U.S. 630 (2004); <u>United States v. McCurdy</u>, 40 F.3d 1111, 1117 (10th Cir. 1994).  However, the fruit of the poisonous tree rule does not apply even if defendant successfully proves that police obtained a statement through custodial interrogation without giving a <u>Miranda</u> warning.  <u>United States v. Pettigrew</u>, 468 F.3d 626, 636 (10th Cir. 2006).  The <u>Miranda</u> exclusionary rule requires only that the court exclude any "unwarned statement" itself.  <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985).

In this case, defendant does not dispute that he received a <u>Miranda</u> warning and he waived his <u>Miranda</u> rights.  However, he argues that his waiver was involuntary and any statements he made following his arrest should be suppressed.  The government bears the burden to prove by a preponderance of the evidence that defendant voluntarily waived his <u>Miranda</u> rights.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 168-69 (1986).  The Court must consider the totality of the circumstances

to determine whether defendant's waiver was voluntary.  <u>United States v. Hernandez</u>, 93 F.3d 1493, 1051 (10th Cir. 1996).  The Tenth Circuit has identified five factors that should be considered by a court when determining whether a <u>Miranda</u> waiver was voluntary:

> (1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment."

<u>United States v. Carrizales-Toledo</u>, 454 F.3d 1142 (10th Cir. 2006) (quoting <u>United States v. Glover</u>, 104 F.3d 1570, 1579 (10th Cir. 1997)).  These factors are not exclusive and a court should consider any other evidence showing that "the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne."  <u>Id</u>. (quoting <u>United States v. Rith</u>, 164 F.3d 1323, 1333 (10th Cir. 1999)).

At the suppression hearing, Sokoloski testified that she was concerned about the unsanitary and possibly dangerous conditions in the home and she did make statements about taking Gorman Jr. into state custody.  Specifically, she talked to Carreiro about the cleanliness of the house and Carreiro claimed that the house was being remodeled.  This conversation occurred in the front yard and, even if defendant overheard some of the conversation, none of Sokoloski's remarks were purposefully directed to defendant.  Sokoloski testified that she briefly spoke to defendant, but she confirmed with Ritter that defendant had received a <u>Miranda</u> warning before she talked to defendant. She asked defendant about the condition of the house and she told defendant that she was concerned about the well-being of the child.  However, she testified that she did not yell at defendant and spoke to him in a firm tone of voice.

Leatherman testified that he interviewed defendant after Ritter read defendant his <u>Miranda</u> rights.  After Leatherman confirmed that Ritter had read defendant his rights, he escorted defendant

6

to the converted bedroom.  He testified that he did not make any threats or promises to encourage defendant to talk and he did not believe that defendant was under the influence of drugs or alcohol. Defendant told Leatherman that he was responsible for the firearm and the marijuana.  However, defendant refused to answer a question concerning his marijuana supplier, and this confirmed for Leatherman that defendant was aware of his right to stop answering questions at any time. Leatherman described the conversation as casual on the part of Leatherman and defendant. Leatherman was not present when Sokoloski spoke to defendant, but he confirmed her testimony that police have the power to take children into protective custody under appropriate circumstances.

The Court finds the testimony of Sokoloski and Leatherman credible and does not find that any improper threats were made to directly or indirectly coerce defendant into making an incriminating statement.  Based on Sokoloski's and Leatherman's testimony, police could take defendant's child into protective custody if they feared for the safety and well-being of the child, and these were not idle threats.  Police found a loaded firearm within reach of a child and marijuana in an unlocked box on the floor.  Combined with other unsafe conditions in the home, such as the lack of any light source in the child's room, police had a legitimate reason to be concerned about the child's safety.  Police may not threaten to remove a person from a loved one for the purpose of coercing a confession.  See United States v. Tingle, 658 F.2d 1332, 1336-37 (9th Cir. 1981). However, police may make truthful statements that impact a child or loved one without rendering a defendant's statement involuntary.  United States v. Jones, 32 F.3d 1512, 1517 (11th Cir. 1994) (statement by police that the defendant's girlfriend would also be considered a suspect if the defendant refused to cooperate was truthful and not a ground to suppress the defendant's statements as involuntary).  The mere fact that Sokoloski made statements about placing defendant's child in

7

DHS custody does not require suppression of defendant's statements claiming ownership of the firearm and marijuana.

The Court's conclusion is bolstered by defendant's own conduct, which implies that he was fully aware of his Miranda rights and was not improperly coerced by Sokoloski's statements. Defendant admitted to possessing the firearm and marijuana found in the home, but he refused to disclose the identity of his marijuana supplier. This shows that defendant was clearly aware of his Miranda rights because, even though he did not expressly invoke Miranda, he impliedly relied on his right to stop answering questions without the presence of an attorney. Defendant also denied that he sold marijuana for business purposes, and claimed that he distributed marijuana to friends without any profit to himself. In essence, defendant was attempting to deny liability for distribution of marijuana. This also suggests that defendant's free will was not overcome by Sokoloski's conduct. Based on the legitimacy of Sokoloski's statements and defendant's own conduct, defendant's claim that he involuntarily spoke to Ritter and Leatherman to avoid having his child taken into DHS custody is not credible.[3]

The Court must still consider the five-factor test from Carrizales-Toledo to determine whether defendant's statements are admissible. Applying the five factors from Carrizales-Toledo, the government has shown that defendant's decision to waive his Miranda rights was voluntary. At the time of the search, defendant was 28 years old and he is now 29. See Dkt. # 18, Ex. A. Ritter testified that he read defendant a Miranda warning about five minutes after the search was initiated and Leatherman testified that he began the interview about five minutes later. Ten minutes is not

---

[3]     The Court notes that Gorman Jr. was not taken into protective custody and he remained in the custody of Carreira following defendant's arrest.

an excessive period of time. There is no evidence about the length of Leatherman's questioning, but there is no indication from the police report or Leatherman's testimony that it was a lengthy interrogation. Defendant was advised of his constitutional rights before he talked to Leatherman and does not challenge Ritter's testimony that a <u>Miranda</u> warning was given before any questioning occurred. There is no evidence that defendant was subject to physical punishment and, aside from defendant's allegations concerning the coercive effect of Sokoloski's remark, no indication that police attempted to engage in any psychological coercion. It is clear that defendant retained enough willpower to refuse to answer questions, because he refused to identify his supplier of marijuana after questioning by Leatherman. Based on this evidence, the Court finds that defendant's statement to police followed a <u>Miranda</u> warning, that defendant waived his <u>Miranda</u> rights, and his waiver was voluntary. Therefore, defendant's motion to suppress statements (Dkt. # 15) should be denied.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress Statements (Dkt. # 15) is **denied**.

**DATED** this 9th day of September, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

9