UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CR-0147-CVE |
| ) | (10-CV-820-CVE-FHM) |
| RENE JOSEPH GORMAN, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

On December 27, 2010, defendant Rene Joseph Gorman, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. ## 58, 59). Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Plaintiff filed a response in opposition to the motion (Dkt. # 62); defendant filed a reply (Dkt. # 65) and errata to reply (Dkt. # 67).

**I.**

On August 5, 2008, a grand jury returned a sealed indictment charging defendant with possession of marijuana with intent to distribute (count one), possession of a firearm in furtherance of a drug trafficking crime (count two), and possession of a firearm after former felony conviction (count three). Dkt. # 1. Defendant made his initial appearance on August 6, 2008, and the Court appointed Kevin D. Adams to represent defendant. Dkt. # 6. Defense counsel filed a motion to suppress physical evidence seized from defendant's residence (Dkt. # 14) and a motion to suppress

statements made by defendant (Dkt. # 15), and the Court set the motions for an evidentiary hearing on September 8, 2008.

At the evidentiary hearing, defendant withdrew his motion to suppress physical evidence. See Dkt. # 23. Tulsa Police Department (TPD) Officers Ashley Sokoloski, Ronnie Leatherman, and Justin Ritter testified at the evidentiary hearing. Leatherman testified that he prepared an affidavit for search warrant for defendant's home and obtained a search warrant.[1] TPD officers executed the search warrant and were required to forcibly enter defendant's home. Police made contact with defendant, a woman identified as Angel Carreira, and Rene Gorman, Jr., defendant's two year old son, and asked the occupants of the home to wait in the front yard during the search. The search resulted in the discovery of over 300 grams of marijuana and a chamber-loaded .45 caliber handgun in the same room as the marijuana. The marijuana and handgun were located within reach of the child. Ritter read defendant his Miranda rights while the search took place and defendant voluntarily agreed to speak to Ritter. Ritter testified that defendant made a statement to the effect that he would "take the charges" if his wife would not be charged with a crime. Leatherman interviewed defendant after the search had been completed, and defendant repeated his statement that he wanted to "take all the charges." Leatherman had checked defendant's criminal history and discovered that defendant had previously been convicted of a felony. Defendant told Leatherman that he knew he was not permitted to have a firearm, but his wife "had been run in on" and he needed the gun to protect his family. Defendant also stated that he sold drugs to friends "at cost," but he did not make

---

[1] Neither party requested a transcript of the suppression hearing, and the Court relies on its factual findings in the opinion and order denying defendant's motion to suppress statements to provide this overview of the testimony presented at the evidentiary hearing. See Dkt. # 27, at 1-4.

his living as a drug dealer. Defendant refused to identify his marijuana supplier. Defendant was arrested but police officers allowed Carreira and defendant's son to remain in the home.

Defendant argued that Sokoloski threatened to take his son into state custody and he felt compelled to speak to police to prevent this from happening. Sokoloski testified that she did ask defendant about the poor living conditions in the home and informed defendant that it may be necessary to take defendant's son into state custody. However, she clarified that police do have the authority to contact the Oklahoma Department of Human Services (DHS), and she did not make an empty threat in an attempt to coerce defendant to waive his <u>Miranda</u> rights. Sokoloski testified that she was concerned about unsafe conditions in the home, in addition to the presence of marijuana and a loaded firearm within reach of the child, and she felt that it was necessary to investigate this matter before police decided whether to contact DHS.

The Court denied defendant's motion to suppress his statements to police, and found that he voluntarily waived his <u>Miranda</u> rights. The Court found that Sokoloski's statements about taking defendant's child into state custody were not "idle threats" but, instead, were based on objective evidence that the home was unsafe for a child. Dkt. # 27, at 7. The Court also considered defendant's refusal to answer questions about his marijuana supplier and his denial that he distributed marijuana for profit as evidence that defendant's free will was not overcome by Sokoloski's conduct. <u>Id.</u> at 8.

Defendant exercised his right to a jury trial and trial began on September 15, 2008. Defendant stipulated that the alleged offenses occurred in the Northern District of Oklahoma, that the firearm moved in interstate commerce before it was possessed by defendant, and that he had a prior felony conviction. Dkt. # 50, at 9. The government's first witness was Jeffrey Edwards, a

TPD officer assigned to the Special Investigations Division, who assisted with the search of defendant's residence. Id. at 10. Edwards was the "knock and announce" officer designated to announce the presence of police officers and serve the search warrant on residents of the home. Id. at 11. Edwards knocked on the door and heard people moving inside, but no one came to answer the door and Edwards was concerned that people inside the home were destroying evidence. Id. Edwards breached the door and found three persons in a living area. Id. at 12. He began searching the home and found a decorative box containing a brick of marijuana. Id. at 13. Edwards also found a digital scale next to the box, and the digital scale was covered in marijuana residue. Id. at 14. Gregory McClintock, a TPD officer assigned to the Special Investigations Division, testified that he assisted with the search of defendant's residence. Id. at 18-19. McClintock observed a firearm and a box of ammunition on top of a speaker in the same room where the decorative box containing the marijuana was found. Id. at 20-21, 24. David Brice, another TPD officer, testified that he participated in the search of defendant's residence and seized the firearm. The firearm was a chamber-loaded semi-automatic pistol with additional rounds of ammunition in the magazine. Id. at 28. Brice testified that the firearm was located on top of a speaker near the couch, and pictures introduced into evidence by the government accurately showed the location of the firearm when he seized it. Id. at 29-30.

Sokoloski testified that she originally participated in the search as a rear containment officer to prevent any person from escaping from the back of the house, but she subsequently assisted with the search and recovered evidence from defendant's residence. Id. at 31-32. Sokoloski prepared a property receipt describing the evidence seized from the residence, and the receipt included three separate items of marijuana seized from different rooms. Id. at 33. The largest amount of marijuana

4

was the marijuana brick found in the decorative box in the living room. She weighed the brick of marijuana and noted on the property receipt that the brick weighed 319.03 grams. Id. at 37. The property receipt also states that police recovered a functional digital scale, a firearm, nine rounds of ammunition found in the firearm, and a box containing additional rounds of ammunition. Id. at 39-41. She testified that the presence of digital scales and a firearm are indicia that defendant possessed the marijuana with intent to distribute it. Id. at 42-43. On cross-examination, Sokoloski testified that she also recovered drug paraphernalia associated with marijuana use, and defense counsel attempted to show that it was reasonable to believe that defendant possessed marijuana for personal use only. Id. at 45-49. In particular, defense counsel asked Sokoloski if it would be cheaper for a marijuana user to buy bulk quantities of marijuana, and Sokoloski agreed that it could be less expensive. Id. at 49. Sokoloski denied that she threatened to call DHS, but acknowledged that she did discuss the living conditions with Carreira and she told Carreira that she could take the child into custody. Id. at 52. Sokoloski described the home as dirty and very cluttered, and there were four pets, including two snakes. Id. at 54. Sokoloski attempted to find a light source in the child's room, but was informed that Carreira had removed the light bulb from the child's room to replace the light bulb in a snake's cage. Id. at 55. Carreira was originally handcuffed when the search was initiated, but Sokoloski later removed the handcuffs. Id. at 53.

Ritter testified that he read defendant his Miranda rights after initially making contact with him. Id. at 58. Defendant stated that he understood his rights and told Ritter that he wanted to "take all the charges." Id. at 59, 61. Ritter did not believe that defendant was under the influence of drugs or alcohol when they spoke. Id. at 62-63. Leatherman testified that he spoke to defendant after Ritter had informed defendant of his Miranda rights. Leatherman escorted defendant to the child's

5

bedroom and interviewed him. Defendant admitted that the marijuana and firearm belonged to him, and he had recently purchased the firearm to protect his girlfriend. Id. at 67. Defendant told Leatherman that he was aware he was prohibited from possessing a firearm due to his prior felony conviction, but he felt that the firearm was necessary to protect his family. Id. Leatherman asked defendant if he sold marijuana, and he stated that he sold marijuana "to a few friends at cost." Id. at 68. Defendant refused to provide any information about his marijuana supplier. Id. Leatherman testified that the amount of marijuana found in defendant's residence was more consistent with distribution than personal use. Id. at 69.

The government rested its case-in-chief and defendant chose to take the witness stand. Defendant described the various drug paraphernalia found in his home and how he would use the items to smoke marijuana. Id. at 83-86. He testified that he used "a lot of marijuana" and described a normal day:

> I wake up. Before I get ready to go to work, I roll one up, smoke it, take another one. Sometimes I smoke two before I go to work. Make sure I have one rolled up to take with me to work so I can smoke during the day. Before I come home, I call home and make sure we have wraps or something like that to -- or did I have to stop at the store, because as soon as [sic] get home, I like to smoke. It would be the last thing I do before I go to bed, is -- I just like to get high a lot.

Id. at 87. Defendant stated that he used a tax refund or stimulus check to buy a bulk quantity of marijuana at a cheaper rate. Id. Defendant testified that the gun found on top of a speaker belonged to his friend and had been left his house the night before the search. Id. at 89. He also testified that the gun was about 12 feet from the decorative box containing marijuana. Id. at 99. Defendant claimed that police threatened to take his son into custody, and Sokoloski said that "we were all going to sleep next to a stranger tonight." Id. at 92. Defendant testified that he told police officers he would "take the charges" if they would leave his wife and son alone, but he did not say that he

6

sold marijuana to friends at cost. Id. at 92. He stated that he owned the digital scale to weigh marijuana when he purchased it to ensure that he received the correct amount. Id. at 93.

The defense rested on September 15, 2008, and the parties made their closing arguments the following morning. Defense counsel argued that defendant possessed marijuana for personal use, but there was insufficient evidence to show that defendant distributed or intended to distribute marijuana. Dkt. # 51, at 22. His primary argument was that defendant purchased marijuana in bulk quantities to save money, and he asserted that defendant bought a brick of marijuana in the same manner as a person shopping for household goods at a Sam's Club or Costco store. Id. at 25. Defense counsel asked the jury not to consider alleged statements made by defendant to Ritter or Leatherman, because the conduct of the police rendered defendant's statements involuntary. Id. at 27. He also argued that defendant did not know that there was a gun in his house, and the government failed to meet its burden to show that defendant possessed a firearm for any purpose. Id. at 28-30.

The jury sent a note to the Court asking to see transcripts of the testimony of defendant and Leatherman. Id. at 42. The Court responded that transcripts were not prepared during a trial and the jurors would have to rely on their independent recollections of the testimony. Id. The jury sent another note to the Court asking to have defendant's testimony read to them. The Court advised the jury that it was not permitted to read a witness' entire testimony to the jury, but the jury could ask to hear specific portions of a witness' testimony. Id. at 43. The jury specifically asked to hear any testimony as to whether defendant stated that "'I' or 'we' used the pot." Id. at 44. The Court and attorneys for both parties agreed on select portions of the transcript that could be read to the jury, and these portions were read to the jury. Id. at 45-49. The jury completed its deliberations and

7

found defendant guilty as to all three counts of the indictment. On December 18, 2008, the Court sentenced defendant to 41 months imprisonment concurrent as to counts one and three and sixty months imprisonment as to count two, to run consecutively to sentences imposed for counts one and three, for a total sentence of 101 months imprisonment. Dkt. # 41.

Defendant appealed his convictions to the Tenth Circuit Court of Appeals, and Adams continued to represent defendant on appeal. Defendant argued that the government failed to present sufficient evident to support his conviction for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). On December 10, 2009, the Tenth Circuit affirmed defendant's conviction under § 924(c). Dkt. # 56. Defendant did not file a petition for writ of certiorari in the United States Supreme Court, and his convictions became final 90 days after the Tenth Circuit issued its decision, or on March 10, 2010. Clay v. United States, 537 U.S. 522, 527 (2003). Defendant filed his motion to vacate, set aside, or correct sentence pursuant to § 2255 (Dkt. ## 58, 59) on December 27, 2010. Therefore, defendant's motion was filed within the one year statute of limitations provided by § 2255, and his motion is timely.

## II.

Defendant alleges that his attorney performed deficiently at trial and on appeal, and asks the Court to vacate his convictions and sentence. Defendant's § 2255 motion does not clearly identify the alleged acts or omissions constituting ineffective assistance of counsel. However, defendant challenges Leatherman's credibility due to an ongoing investigation of other TPD officers, and claims that defense counsel failed to conduct an adequate investigation into Leatherman's conduct. Dkt. # 59, at 3. In his reply, defendant clarifies his argument and states that he is challenging Leatherman's testimony that defendant told Leatherman that "he sold drugs to friends at cost." Dkt.

8

# 67, at 1.  The Court is aware that defendant is not represented by an attorney and, consistent with Supreme Court and Tenth Circuit precedent, the Court will construe defendant's pro se pleadings liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002).

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).  A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance."  Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).  In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance."  Thus, the prejudice prong of the Strickland test does not require that any increase in

sentence must meet a standard of significance.  See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

Defendant's primary argument is that defense counsel failed to challenge the veracity of Leatherman's testimony.  Dkt. # 59, at 3; Dkt. # 67, at 1.  However, the trial transcript shows that defense counsel vigorously cross-examined Leatherman and his performance at trial was not deficient.  Defense counsel established that Leatherman had the capacity to record defendant's statements with audio equipment or in writing, but he failed to take a formal statement from defendant. Dkt. # 50, at 71.  He challenged Leatherman's recollection of the search and showed that Leatherman could not clearly recall many of the items seized from the home.  Id. at 72-73.  Defense counsel also used his cross-examination of Leatherman to attempt to show that not all of the evidence pointed toward the conclusion that defendant was distributing marijuana.  Id. at 73-74.  On re-cross examination of Leatherman, defense counsel questioned Leatherman about the location of the firearm and Leatherman admitted that he did not actually see the firearm.  Id. at 75-76.  Based on a review of the trial transcript, the Court finds that there is no evidence supporting defendant's allegation that trial counsel failed to challenge Leatherman's credibility at trial.

Defendant claims that defense counsel failed to challenge the veracity of Leatherman's testimony that defendant stated that he "sold drugs to friends at cost," and he asked defense counsel to file a pretrial motion to suppress this evidence based on the alleged falsity of Leatherman's testimony.  Dkt. # 67, at 1.  However, the purpose of a suppression motion is to determine whether evidence should be suppressed due to a constitutional or statutory violation.  Defendant's argument goes to the substance of Leatherman's testimony, not its admissibility, and it was for the finder of fact to determine if defendant actually made the disputed statement.  Defense counsel properly

10

challenged the admissibility of the statement on the ground that defendant's statement was involuntary and reserved any argument as to the truth of Leatherman's testimony for trial. Thus, defense counsel's performance was not deficient for his failure to challenge before trial the truthfulness of Leatherman's testimony.[2]

Defendant may also be alleging that defense counsel failed to conduct an adequate investigation into the possibility that Leatherman engaged in misconduct, and he argues that recent events have shown that members of the Special Investigations Division of TPD have engaged in "fraud, extortion, and other major crimes." Dkt. # 59, at 3. However, defendant's allegations concerning the adequacy of counsel's investigation are not supported by the record. Defense counsel filed a pretrial motion to suppress statements (Dkt. # 15) and the Court granted defendant's request for an evidentiary hearing on this motion. Leatherman testified at the hearing and defense counsel cross-examined Leatherman. Leatherman also testified at trial and defense counsel's cross-examination of Leatherman highlighted any weaknesses in Leatherman's testimony. The mere fact that Leatherman worked in the Special Investigations Division of TPD does not mean that Leatherman engaged in police misconduct or that any improper conduct by any other member of the Special Investigations Division occurred in this case. None of the police officers involved in this

---

[2]  Defendant appears to believe that his statement to Leatherman was the sole evidence showing that defendant distributed marijuana. However, defendant admits in his reply that defendant and Carreira both used marijuana, and defendant purchased the marijuana used by both of them. Dkt. # 67, at 2. The evidence at trial gave rise to inference that defendant and Carreira both used marijuana. See Dkt. # 50, at 87-88. This evidence would independently be sufficient to support a finding that defendant possessed marijuana with intent to distribute, and the jury's notes to the Court suggests that the jury was aware of this fact. Defendant also overlooks the quantity of marijuana as well as the presence of a loaded firearm and a digital scale, all of which are indicative of drug trafficking rather than possession of marijuana for personal use.

case have been charged with a crime. The Court also notes that the trial in this case occurred before any information about the alleged police misconduct became available to the public, and defense counsel had no reasonable basis to suspect that police officers engaged in misconduct in this or any other case. Vague allegations of police misconduct are not sufficient to grant relief under § 2255, nor do these allegations entitle defendant to an evidentiary hearing on his § 2255 motion.

Defendant also argues that defense counsel provided ineffective assistance of counsel on appeal. However, neither defendant's § 2255 motion nor his reply identifies any specific issue that counsel failed to raise on appeal. To the extent that a criminal defendant alleges certain arguments should have been raised on appeal, the Court must consider the merits of the omitted issue. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.'" Id. Defense counsel filed an appeal challenging the sufficiency of the evidence to convict defendant of possessing a firearm in furtherance of a drug trafficking crime, and it is unclear what other issues defendant believes should have asserted on appeal. See Dkt. # 56 (order and judgment denying defendant's appeal). Defendant has not specifically identified any issues that defense counsel failed to raise on direct appeal. Construing defendant's § 2255 motion and reply broadly, defendant may be claiming that defense counsel should have raised allegations of police misconduct on direct appeal. However, information about the police corruption scandal was not publicly known at the time of defendant's appeal, and defense counsel could not have raised this issue on appeal. There is also no evidence suggesting that any of the police officers involved in this case committed any misconduct in this or any other case, and defense counsel had no factual basis to raise any argument of police misconduct.

12

**IT IS THEREFORE ORDERED** that defendant's Motion to Vacate, Set Aside, or Correct Sentence (Dkt. ## 58, 59) is **denied**. A separate judgment is entered herewith.

**DATED** this 22nd day of March, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT